UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

DEBRA L. BROWN
    Plaintiff

v.                                                                                                                                 No. 5:12-CV-00145-LLK

CAROLYN W. COLVIN
    Commissioner of Social Security
    Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon the Plaintiff's Complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, to conduct all further proceedings in this case, including entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. Docket Entry (DN) 10.

The fact and law summaries of the Plaintiff and the Defendant are at DN 11 and DN 12, respectively. The Plaintiff was represented at the administrative level by the Honorable Karen Alderdice and is represented, before this Court, by the Honorable Donald R. Green, Jr.

For the reasons below, this matter is REMANDED to the Commissioner for a new decision and development of the medical evidence with respect to the Plaintiff's residual functional capacity (RFC) prior to the date last insured (DLI).

BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff has filed two claims for disability insurance benefits under Title II of the Social Security Act. On September 22, 2006, Administrative Law Judge (ALJ) Thomas R. Bryan denied the first claim, finding, among other things, that the Plaintiff has a residual functional capacity (RFC) to perform a limited range of light work (AR, p. 76). ALJ Bryan's decision became the Commissioner's final decision after the Plaintiff did not seek further review.

On December 31, 2008, the Plaintiff's insured status for Title II benefits expired.

On November 3, 2009, she filed a second application for benefits, alleging an onset of disability date of September 23, 2006 – the day after ALJ Bryan's decision.

On April 7, 2011, ALJ Kathleen M. Thomas issued the final decision of the Commissioner, which is before this Court upon judicial review.  The ALJ found that the Plaintiff was not disabled at any time from September 23, 2006, the alleged onset date, through December 31, 2008, the date last insured [DLI] (AR, p. 27).

## NO MEDICAL EVIDENCE SUPPORTING ALJ's RFC

The ALJ found that, prior to the DLI, the Plaintiff had an RFC for light work (AR, p. 25).

RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The determination of RFC is an issue reserved to the Commissioner.  § 404.1527(e)(1)(i).  However, it must be supported by substantial evidence.

Unless substantial evidence supports a determination of a claimant's RFC based solely on the non-medical evidence, an ALJ's RFC finding must be supported by at least one medical opinion.  When determining a claimant's RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Commissioner*, 2009 WL 2628355 (6th Cir.) (quoting *Rohan v. Secretary*, 98 F.3d 966, 970 (7th Cir.1996)).  As lay individuals, ALJs are simply not qualified to "interpret raw medical data in functional terms."  *Deskin v. Commissioner*, 60 F.Supp.2d 908, 912 (N.D.Ohio 2008) (quoting *Nguyen v. Secretary*, 172 F.3d 31, 35 (1st Cir.1999)). "[L]ay intuitions about medical phenomenon are often wrong."  *Id.* (quoting *Schmidt v. Secretary*, 914 F.2d 117, 118 (7th Cir.1990)).

On February 1, 2011, the Plaintiff's treating physician, Emily Rayes-Prince, completed the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form (AR, pp. 519-523).  In a follow-up letter to Plaintiff's counsel, Karen Alderdice, Dr. Rayes-Prince opined that "within reasonable

2

medical probability" these limitations existed "prior to the 12/31/2008 date when [Plaintiff] was last insured for purposes of Social Security" (AR, p. 544). The vocational expert (VE) testified that acceptance of Dr. Rayes-Prince's findings would preclude all work (AR, pp. 66-67).

The ALJ gave "little weight" to the opinion of Dr. Rayes-Prince concerning the Plaintiff's limitations prior to the DLI because "there is simply no objective or other evidence of record to support the degree of limitations she assessed on or prior to December 31, 2008" (AR, p. 25).

Besides Dr. Rayes-Prince's opinion, the administrative record contains only one medical source opinion with respect to the Plaintiff's RFC. The State Agency reviewing physicians determined that "[t]here is insufficient evidence in the file to make a determination regarding the claimant's physical condition prior to the DLI of 12/31/08" (AR, pp. 387 and 466). The ALJ gave "little weight" to the State Agency opinions, finding that she was legally "bound" by ALJ Bryan's prior RFC for light work (AR, p. 25).

An examination of the opinions of Dr. Rayes-Prince (AR, pp. 519-523 and 543-544) reveals that her clinical bases were relatively complex and, therefore, substantial evidence did not support a determination of the Plaintiff's RFC based solely on the non-medical evidence. Having rejected all medical opinions of record pertaining to the Plaintiff's RFC prior to the DLI, the ALJ's RFC for light work was not supported by substantial evidence.

## DRUMMOND v. COMMISSIONER

Although there is no medical support for the ALJ's RFC, it does not appear that the ALJ's failure to develop the medical evidence was motivated primarily by having "succumb[ed] to the temptation to play doctor" as described in *Simpson*, supra. Rather, the ALJ erroneously determined that she was legally "bound" by ALJ Bryan's prior RFC for light work, preventing her from interpreting the medical evidence inconsistent with the prior RFC.

In adopting Acquiescence Rulings (AR) 98-3(6) and 98-4(6), the Social Security Administration recognized the applicability, in cases arising within the Sixth Circuit, of *Dennard v. Secretary*, 907 F.2d 598 (6th Cir.1990) and *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir.1997), respectively. These cases protect claimants against arbitrary re-adjudications by the Commissioner. Collectively, they stand for the proposition that, absent evidence of changed circumstances or improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ with respect to the vocational characterization of the claimant's past relevant work (*Dennard*), a claimant's RFC (*Drummond*), or any other finding required under the sequential evaluation process for the prior determination of lack of disability. *Drummond* held that the subsequent ALJ improperly found that Ms. Drummond could perform "medium" work in light of the prior ALJ's finding that she could perform, at most, "sedentary" work.

In her written decision and at the hearing, the ALJ repeatedly indicated that she felt "bound," based on her interpretation of *Dennard* and *Drummond*, to ALJ Bryan's prior RFC for light work because she found no evidence of medical improvement after ALJ Bryan's decision(AR, pp. 25, 38, and 64).

Having found no medical improvement, the ALJ was bound in the sense that she was not free to increase the Plaintiff's RFC to medium or heavy. However, she was not bound in the sense that she could not decrease the Plaintiff's RFC to sedentary.

This Court has previously determined that "we read *Dennard* and *Drummond* as providing claimants additional protections against arbitrary re-adjudications by the Commissioner, not as increasing the burden of proof upon claimants with respect to their RFC's when they file new applications" and that the Commissioner errs when she attempts to apply "what would be [*Drummond*'s] corollary proposition, to-wit, the Commissioner may not find greater restrictions absent evidence of medical worsening or deterioration." *McQueary v. Commissioner*, No. 1:05-CV-00086-J, DN 11, p. 12; *Shelton v. Commissioner*, 5:06CV-00117-J, DN 17, p. 6.

The ALJ's decision does not comport with governing legal standards because there is no indication that she considered the possibility of decreasing Plaintiff's RFC to sedentary work, unburdened by ALJ Bryan's prior RFC for light work.

## TREATING PHYSICIAN RULE

The Plaintiff argues that the ALJ erred in declining to give controlling weight to the disabling medical opinion of her treating physician, Dr. Rayes-Prince, particularly her letter to the effect that her prior RFC findings, which would preclude all work, relate back to the period before the DLI.

The argument is unpersuasive because, according to the Plaintiff's own chronology, she did not begin treatment with Dr. Rayes-Prince until September 4, 2009 (DN 11, p. 7, AR, p. 517) -- after the DLI of December 31, 2008. A treating physician's opinion is "minimally probative" when the physician began treatment after the expiration of the claimant's insured status. *Siterlet v. Secretary*, 823 F.2d 918, 920 (6th Cir.1987).

The Court acknowledges that *Siterlet* is distinguishable from the present situation in that the treating physician in *Siterlet* gave only a current assessment, whereas Dr. Rayes-Prince specifically related her assessment back to the period prior to the DLI (AR, pp. 519-523 and 543-544). However, the distinction is not of controlling significance.

The so-called treating physician rule requires the Commissioner to consider a treating source medical opinion as special and under certain circumstances entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2). The rationale behind the rule is that treating physicians:

> ... are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

§ 404.1527(c)(2). "The reasons for affording controlling weight to a treating physician are inapplicable where that physician did not begin treating the claimant until ... after the relevant time frame." *Carroll ex rel. Carroll v. Commissioner*, 2013 WL 160261, *1 (D.Md.).

In opining that current limitations relate back to prior years, Dr. Rayes-Prince was functioning as a consultant or expert, not as a treating source. The ALJ was not obliged to give controlling weight to the disabling opinions of Dr. Rayes-Prince.

## DUTY TO DEVELOP THE RECORD

The Plaintiff has persuasively shown that, in light of Dr. Rayes-Prince's opinion, the ALJ's RFC for light work is not supported by substantial evidence. However, as discussed above, the root problem was not that the ALJ was required to defer to Dr. Rayes-Prince's opinion but that the ALJ had no alternative medical opinion upon which to base her RFC.

"While it is certainly true that a treating physician's diagnosis of a patient's condition at a time in the past while the physician was not treating his patient is entitled to less weight than a treating physician's diagnosis of [her] patient's current condition while under active treatment or observation, where there is no medical testimony to rebut the retrospective opinion of the treating physician, nor is there overwhelmingly compelling non-medical evidence to the contrary, in the absence of competing medical opinions, then there is not substantial evidence necessary to support the ALJ's determination." *Campbell v. Barnhart*, 178 F.Supp.2d 123, 134 (D.Conn.2001) *(internal citations and quotations eliminated)*.

Where a claimant has fulfilled her obligation to develop the evidence in support of her disability claim, as in this case, and the ALJ is unsatisfied with that evidence, the ALJ must "recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Deskin*, supra, at 912.

NO BREAK IN TREATMENT

Plaintiff last saw Dr. Richardson on September 9, 2008 (AR, p. 286), prior to the DLI of December 31, 2008.  Plaintiff argues that the ALJ erred in finding that "[t]here was a significant break in treatment by the claimant after Dr. Richardson moved" her practice to another town (AR, p. 24), including "significant breaks in the claimant's pain management treatment, which would indicate that her symptoms improved" (AR, p. 26).

The Commissioner concedes that this finding was erroneous (DN 12, p. 6).  The record shows that, after Dr. Richardson moved, Plaintiff continued with regular visits to Sean McDonald, M.D., and the medication nurse with increasing complaints of pain (AR, pp. 287-288, 324-336), until Plaintiff first saw Dr. Rayes-Prince on September 4, 2009 (AR, p. 517).

The Court agrees with the Commissioner that the error was harmless because the record contains no medical opinion prior to the DLI of December 31, 2008, that purported to take into account the pain management treatment that the ALJ improperly discounted.

THE GRID

Plaintiff contends that the ALJ erred in relying on the so-called Grid, or medical-vocational guidelines in Appendix 2 of the regulations, to deny her disability claim.  The Grid comes into play at the fifth and final step of the sequential evaluation.  *Jordan v. Commissioner*, 548 F.3d 417, 424 (6th Cir.2008).  Because the Grid contemplates only exertional limitations, if a claimant suffers from any vocationally-significant non-exertional impairment, the Commissioner may not rely on the Grid to deny benefits.  *Id.*  Instead, the ALJ must rely on evidence, typically testimony from a vocational expert (VE), that is tailored to take into account the vocational impact of the claimant's exertional and non-exertional restrictions as a whole.

In a non-Grid case, the Commissioner may nevertheless cite to a particular Grid rule as a "framework for decisionmaking."  The framework rule is the closest applicable rule excluding

consideration of the non-exertional limitations found to be present. The focus of judicial review in a framework case is whether the hypothetical, to which the VE identified a significant number of compatible jobs in the national economy, took into account all vocationally-significant exertional and non-exertional limitations that the ALJ found to be present and which the substantial weight of the evidence required the ALJ to find to be present. *Varley v. Secretary*, 820 F.2d 777 (6th Cir.1987). Unless the plaintiff points the court to evidence in the administrative record of an additional limitation not contemplated by the hypothetical, which the ALJ was required to accept, the court should affirm the ALJ's decision upon the strength of the vocational testimony.

In this case, the ALJ cited Grid Rule 202.21, which contemplates a maximum exertional capacity for light work, as a framework for decisionmaking, but specifically stated that it was inappropriate to rely on the Rule because Plaintiff's "ability to perform all or substantially all of the requirements of this level of work was impeded by additional [non-exertional] limitations" (AR, p. 27). The ALJ relied upon the vocational testimony.

The Plaintiff's contention that the ALJ erred in relying on the Grid to deny her disability claim is without merit because the ALJ did not rely on the Grid.

## ORDER

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision and, if necessary, development of the medical evidence with respect to the Plaintiff's residual functional capacity (RFC) prior to the date last insured (DLI).